We have reviewed the Brown-Forman and the Hay cases and find that they are decisive of the issues herein presented and

feel that the conclusions reached therein should be affirmed. It would serve no useful purpose to reiterate the reasons upon which these conclusions were based.

For the reasons assigned, the judgment of the lower court is affirmed at the cost of the appellant.

107 So.2d 641

Vincent ORLANDO

v.

Dr. William Jay ELMER.

No. 43659.

Dec. 15, 1958.

Rehearing Denied Jan. 12, 1959.

McDonald & Buchler, Metairie, by Patrick E. Carr, New Orleans, for appellant.

Anthony R. Occhipinti, Leo R. Wertheimer, New Orleans, for appellee.

FOURNET, Chief Justice.

The defendant, Dr. William Jay Elmer, who constructed a residence for the plaintiff, Vincent Orlando, is appealing from a judgment awarding the plaintiff $4,180, with interest and costs, for the correction of defects allegedly existing therein, in which judgment the defendant was also awarded $1,251 on a reconventional demand. The plaintiff, answering the appeal, seeks to have the amount awarded him below increased to $5,450, the sum originally sued for, and the defendant seeks to have the amount awarded him on his reconventional demand increased, particularly with respect to his claim for extra work.

The record reveals that the plaintiff and defendant entered into a contract in October of 1953 for the construction of a brick residence on a lot owned by plaintiff bearing No. 5953 Airline Highway in Jefferson Parish for the price of $17,444, to be paid as follows: "Cash amount that I

may owe the contractee (buyer) up to the time of filing an acceptance on this contract, and the balance to be paid in a reasonable time after acceptance and procuring a lien and privilege certificate and cancellation of building contract, if recorded." When the defendant failed to correct defects that allegedly became apparent shortly after the plaintiff took possession of the residence in May of 1954, although amicable demand therefor was made, the plaintiff instituted this suit, attaching to and making a part of his petition an itemized list of some twenty defects assertedly found to exist in the structure by a contractor, together with the contractor's offer to correct the defects for $5,450.

Admitting the contract and acknowledging the plaintiff had paid him $16,193 on the contract price, but generally denying all other allegations of the petition, the defendant sought in reconvention to recover the sum of $2,369.27, being the balance due on the contract price of $1,251, plus $1,116.-27, cla'med to be due for extra work requested by the plaintiff that was not called for in the contract. Although the defendant had admitted in this answer he had received $16,193 from the plaintiff toward liquidation of the contract price, he averred in a supplemental answer he had received only $9,789.05, and sought to have his re-

conventional demand increased from $2,-369.27 to $8,771.22, the difference of $6,403.-95 being the amount he had offset in his original answer against the balance due him by the plaintiff, under the above quoted payment provision of the contract, as cash he owed the plaintiff.[1]

The trial judge, after patiently hearing involved and frequently vague testimony in the case on four different occasions—extending over a period of a year—found "that defects exist as to the construction of the roof, the floor in the kitchen, the floor in the garage, and that the plaster was cracked in several rooms in the home; that an electric light was installed in the hall behind a door which affords no obvious benefit when the door is open, the facia board on the residence is warped and bent, the lintels were erroneously set into the doors and windows, the cove moulding was badly installed, the windows of the residence need caulking, and the windows need resetting;" further, that there "are certain cracks in the outer brick wall which can be traced directly to the erroneous construction of the foundation of said house." He therefore rendered judgment in plaintiff's favor on the main demand, but limited the award to $4,180. With respect to the reconventional demand, he felt defendant failed to establish he had done the extra

1. It would appear this claim was made on advice of counsel in an abundance of caution for the protection of his client's rights on a separate contract he held with a family partnership, of which the plaintiff was a member.

work claimed in the original demand, and refused to consider the additional claim for $6,403.95 set out in the supplemented reconventional demand under Article 375 of the Code of Practice, inasmuch as both parties reside in Jefferson Parish and the demand grows out of an entirely separate contract that is unrelated to the main demand. His award in defendant's favor on the reconventional demand was for $1,251 only, this being the balance plaintiff admittedly owed on the contract price.

■ We find the record amply supports the trial judge's finding that the defects existing in the residence were extensive and serious. In fact, although counsel representing the defendant touch lightly on a few of these defects in written brief, they specify in their assignment of errors only that the trial judge incorrectly concluded "the foundation of the house was defective" and that the numerous cracks in the plaster inside the house and in the brick wall on the outside of the house were due to the faulty workmanship of the defendant, a specification we feel is totally unjustified by the evidence. Many of these defects, and particularly the more serious ones, are, in fact, admitted by the defendant in his testimony, and affirmed by a contractor who inspected the premises at the instance of

the defendant with the view of submitting a bid for their correction and testifying on the trial of this case.

The trial judge does not inform us of the basis on which he predicated his award of $4,180 for the correction of the defects complained of. In support of his claim that it will cost $5,450 to correct them, the plaintiff offered the estimates of two contractors made in April of 1955, one for $5,450 [2] and the other for $5,225. These contractors were called back on three occasions—once at the request of the trial judge himself—and testified in detail with respect to these estimates, breaking them down item by item as to labor, material, overhead, and profit. One stated at the final hearing held in April of 1957 that in view of the rise in cost of material and labor, his estimate, if made then, would be increased by 10% or 15%. As against this we have the testimony of one contractor offered by the defendant, who stated he could make the required corrections for $458 if a drain were used for the escape of water standing in certain places in the garage to a depth of approximately an inch because of the unevenness of the floor, and for $818 if the garage floor itself were raised to the proper level. The defendant testified vaguely and generally that he could

2. This contractor, as well as a civil engineer employed by plaintiff to inspect the premises and make a structural appraisal of the defects therein, each submitted statements for $200 for this work, which statements the trial judge allowed to be introduced in evidence as expert fees, and to be incorporated as a part of the record for the purpose of determining the costs of the litigation.

fix some of the defects under similarly low estimates, to which, in view of the number and seriousness of them, the trial judge justifiably gave little credence. We conclude, therefore, that the plaintiff has clearly established his right to recover $5,450 for the correction of the defects in his home due to faulty construction, and the judgment on the main demand will have to be amended in this respect.

■ The proof with respect to the extra work for which defendant claims $1,116.27 in reconvention is meager and, in most instances, weak and unsatisfactory. There is no itemized statement of this extra work either attached to the reconventional demand or introduced in evidence. These items are certainly not proved with the minute exactness defense counsel sought to have plaintiff prove the cost of correcting the defects in the residence. Yet we find that in a few instances the plaintiff acknowledged his liability for extra work, and where he makes no serious objection to defendant's testimony as to the cost of these items, they will be allowed. These are: (1) ornamental iron work pieces, $12; (2) air conditioning vents over contract price, $10; (3) labor on solid concrete apron to garage, $19; (4) labor and material for construction of flower bed for which plaintiff furnished the bricks, $38.24; (5) cost of installing attic heater in place of wall heater called for in contract, estimated by plaintiff himself to be approximately $100; (6) kitchen exhaust fan, $23; (7) labor and material for installation of second bath tub, furnished by plaintiff, $68.20; and (8) electrical fixtures over those called for in contract, $66.29—making a total of $336.73. It would appear there are several other extras, as, for example, the construction of a walk, which plaintiff admitted, but the proof offered by the defendant as to the costs of these extras is not sufficient to form the basis of an award. The amount claimed as extra for the use of special reinforcement in the foundation of the house will be disallowed, not only for this reason, but also because it was proved that, even with this reinforcement, the foundation is defective.

With respect to the amended reconventional demand, in which defendant seeks to recover the $6,403.95 which he credited to plaintiff in his answer as having been paid on the contract price under the payment provision thereof, the defendant admitted that he owed this amount (if not more) to a family partnership of which plaintiff was a member, and, interpreting this provision himself, stated that whatever sum he thus owed the partnership was to be applied toward the liquidation of the cost of constructing plaintiff's residence. We will not, therefore, disturb the ruling of the trial judge disallowing this sum in reconvention.

■■ In this court counsel representing the defendant has, for the first time, filed

exceptions of no cause and no right of action predicated on the assertion that plaintiff did not allege, and the record does not reveal, defendant was placed in default prior to the filing of the suit. These exceptions are without merit. The record not only reveals that in September and again in October of 1954 the defendant was contacted by attorneys on behalf of the plaintiff in an effort to have him complete the residence and to correct the errors in the structure, but defendant himself admitted he and the plaintiff had attempted on a number of occasions to reach an agreement in the matter. Furthermore, under the express provisions of Article 1932 of the Revised Civil Code, "When there is an active violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action." Such an active violation is overwhelmingly established in this case.

For the reasons assigned, the judgment of the lower court is amended by increasing the award in favor of the plaintiff, Vincent Orlando, from $4,180 to $5,450, and the award under the reconventional demand in favor of the defendant, Dr. William Jay Elmer, from $1,251 to $1,587.73, and, as thus amended, the judgment is affirmed. All costs are to be borne by the defendant-appellant.